UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

-v-

**NOTICE OF MOTION**

DISMARIS CASTRO

07 Cr. 452

Defendant.
------------------------------------------------------------X

PLEASE TAKE NOTICE, that upon the attached affirmation of *Jorge Guttlein, Esq.,* the exhibits thereto, the Affidavit of Dismaris Castro, the accompanying memorandum of law and all the prior proceedings had herein, the defendant *Dismaris Castro* (hereinafter the "defendant") will move this Court before *United States District Judge Denise L. Cote* at the United States Courthouse, located at 500 Pearl Street, new York, New York on May 2, 2008 at 9:30 a.m. in the forenoon or as soon thereafter as counsel may be heard, for the following relief:

1. Compelling the government to provide a witness list prior to trial and to disclose the identity of the confidential information(s) to the defense prior to trial;

2. Suppression of evidence obtained in violation of the Fourth, Fifth and Sixth Amendments to the Constitution;

3. Compelling the government to state officially in advance of trial whether it intends to offer other crimes or wrong "acts" evidence *pursuant to FRE 404(b)*, and if so, ordering a pre-trial hearing to determine the admissibility of that evidence;

4. Compelling the government to provide the defendant, prior trial, with all material which would exculpate him or mitigate his culpability pursuant to *Brady v. Maryland, 323 U.S. 83 (1963)*; see also *Giglio v. United States, 405 U.S. 150 (1972)*;

5. While the defendant, *Dismaris Castro* relies upon the government's Fed. R. Crim. P. Rule 16(a) letter submitted January 25, 2008, the government has stated it will provide all materials to be disclosed under *Brady v. Maryland, 323 U.S. 83 (1963)* and its progeny;

6. Defendant, *Dismaris Castro* relies upon representation of the government in the afore-described Rule 16 letter that it will supply discovery on a continuing basis. While it is anticipated that the government will abide by these representation, the right is hereby reserved to make further motions for such material if the need arises;

7. Defendant, *Dismaris Castro* further reserves the right to make any appropriate motions predicated upon information contained in the discovery material not yet provided;

8. Granting defendant, *Dismaris Castro* such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 18 , 2008

Respectfully submitted,
JORGE GUTTLEIN & ASSOCIATES, P.C.
*Attorneys for*
DISMARIS CASTRO

By______________________________

Jorge Guttlein, Esq.
291 Broadway, Suite 1500
New York, NY 10007
(212) 608-3188

To:

Arlo Devlin-Brown, Esq.
Assistant United States Attorney
One St. Andrews Plaza
New York, New York 10007

Clerk of the Court
United States Courthouse
500 Pearl Street
New York, New York 10007

Honorable Denise L. Cote
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
UNITED STATES OF AMERICA

-v-

DISMARIS CASTRO

Defendant.
--------------------------------------------------------------X

**AFFIRMATION OF JORGE GUTTLEIN, ESQ.**

07 Cr. 452

I, Jorge Guttlein, Esq. affirm under penalty of perjury as follows upon information and belief:

I am counsel for the defendant Dismaris Castro (hereinafter the "defendant") and I make this affirmation in further support of defendant Dismaris Castro's omnibus motion and other relief:

1. Attached hereto when received as ***Exhibit A*** will be a true copy of the indictment filed herein.

2. Attached hereto as ***Exhibit B*** is a true copy of the government's discovery letter provided pursuant to *FRCP 16* dated January 25, 2008.

3. Attached hereto as ***Exhibit C*** is a true copy of the defendant's discovery letter December 18, 2007.

Dated: New York, New York
April 18, 2008

____________________________
Jorge Guttlein, Esq.

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
UNITED STATES OF AMERICA

-v-

DISMARIS CASTRO

Defendant.
--------------------------------------------------------------X

**AFFIDAVIT OF DISMARIS CASTRO**

07 Cr. 452

I, DISMARIS CASTRO, being duly sworn, dispose and say:

1. I am the defendant in the above-captioned action and I make this affidavit in further support of my motion to suppress and other relief.

2. I have reviewed the discovery provided by the government with my counsel.

3. I have particularly reviewed the post-arrest statements attributed to me in the DEA reports stamped 12-13 (attached hereto as ***Exhibit D***).

4. I was interrogated while being transported in a vehicle to the US Marshal's Services after they arrested me in my home. At no time prior to questioning was I ever given oral and/or written *Miranda* warnings.

______________________________

Dismaris Castro

Sworn to before me this April , 2008

___________________________

Notary Public

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA

-v- **MEMORANDUM OF LAW**

DISMARIS CASTRO 07 Cr. 452

Defendant.
---------------------------------------------------------------X

**MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANT DISMARIS CASTRO'S**
**MOTION FOR SUPPRESSION OF EVIDENCE AND OTHER RELIEF**

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted by the defendant Dismaris Castro in support of her pretrial motions to suppress evidence and other relief.

The affirmation of Jorge Guttlein, Esq., executed April 18, 2008 (hereinafter referred to as "Guttlein Affirmation") the exhibits thereto and the Affidavit of Dismaris Castro (hereinafter referred to as "Castro Affidavit") are also submitted in further support of the instant motion.

## STATEMENT OF RELEVANT FACTS

The relevant facts are set forth in the Guttlein Affirmation and the exhibits thereto and the affidavit of Dismaris Castro and will not be repeated herein. We respectfully refer the court to the said documents for pertinent facts.

## POINT I

**THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE**

**TO DEFENDANT PRIOR TO TRIAL ALL MATERIAL, WHICH WOULD EXCULPATE HIM OR MITIGATE HIS CULPABILITY AND SHOULD BE ENCOURAGED TO PROVIIDE SECTION 3500 MATERIAL PRIOR TO TRIAL**

**A. BRADY, AGURS, GILIO AND BAGLEY MATERIAL**

The mandate of *Brady v. Maryland,* 373 U.S. 83 (1963), is clear

> "the suppression of evidence by the prosecution of evidence favorable to an accused *upon request* violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

*Id*. at 87 (emphasis supplied). See also *United States v. Higgs,* 713 F. 2d 39, 42 (3rd Cir.), *cert. denied,* 464 U.S. 1048 (1984). The purpose of the duty imposed by *Brady* is "not simply to correct an imbalance of advantage whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of an imbalance in investigative resources, will be exclusively in the hands of the [prosecution]." *United States v. Bryant,* 439 F. 2d 642, 648 (D.C. Cir. 1971).

Although *Brady* sets no timetable for the production of evidence favorable to the defense, such material should be made available at the *earliest opportunity* and the prosecution "is ordinarily expected to make disclosure *before trial commences*." *United States v. LaRouche,* 695 F. Supp. 1265, 1268 (D. Mass. 1998) (emphasis added). See also *United States v. Pollack,* 534 F. 2d 964 (D.C. Cir. 1976), *cert. denied.* 429 U.S. 924 (1977): *United States v. Germain,* 411 F. Supp. 719, 725 (S.D. Ohio 1975); *United States v. Gleason,* 265 F. Supp. 880.884-885 (S.D.N.Y. 1967); A.B.A. Standards, *Discovery Before Trial* (approved draft 1970) Section 2.1; Note, *The Prosecutors Duty to Reveal Evidence to the Defendant.* 74 YALE L.J. 136, 145 (1964).

As the Court stated in *United States v. Mitchell,* 372 S. Supp. 1239, 1257 (S.D.N.Y. 1973):

> "..we reject the blanket assertion that *Brady* imposes no pretrial obligation on … the [prosecution]… We perceive the due process clause implications of *Brady* as obligating the [prosecution] to disclose exculpatory information *as soon as the character of such information is recognized"* (emphasis in original)

*United States v. Deutsch,* 373 F. Supp. 289, 290 (S.D.N.Y. 1974). See also *United States ex rel Drew v. Myers,* 327 F. 2d 1974 (3rd Cir. 1964); *United States v. Goldman,* 439 F. Supp. 337, 349 (S.D.N.Y. 1997); *United States v. Ahmad,* 53 F.R.D. 186, 194 (M.D. Pa 1971); *United States v. Cobb,* 271 F. Supp. 159, 163 (S.D.N.Y. 1967).

Pursuant to these principals, Ms. Dismaris Castro requests that the Court order the government to produce the sort of materials which, on its face, is directly exculpatory. The government has acknowledged its obligation in this regard, but has failed to state whether it has any such material, and if it does, when the information will be produced.

In addition, Ms. Dismaris Castro requests that the Court order the government to produce the following:

1. The names and addresses of any persons whom the government knows to have relevant information regarding the facts of this case.

2. Copies of all documents, statements and any other evidence, including, but not limited to, a written summary of all oral evidence and statements, now known or which through due diligence may be learned from the investigating agents or witness in this case may be learned from the investigating agents or witness in this case or persons interviewed in connection with this investigation, or which tends to negate or mitigate the guilt of the defendant as to the offenses charged, or which would tend to reduce the punishment therefore.

3. With respect to each person the prosecution intends to call at trial, copies of all indictments, complaints, information, arrest reports or documents evidencing charges brought against such person by the federal, or any state or local governments.

4. With respect to each person the prosecution intends to call at trial, a written summary of all charges which could be brought by the federal or any state or local government, which have not been or may not be brought because the witness is cooperating with any such government or for any other similar or related reason.

5. All memoranda of understanding between the government and its witnesses, whether by way of letter to the attorney for a witness or otherwise.

6. All information which may bear on the credibility of any witness and all information bearing on his relationship to any federal, state or city agency or agent, and any informant services. This request embraces any inducements, promises or benefits conferred at the behest of any individual whom the prosecution intends to call as a witness or any other person, such as a spouse or other family member of the potential witness.

7. All documents and other evidence regarding any individual the prosecution intends to use as a witness at trial, including, but not limited to, records relating to treatment of such individuals in any federal, state, city or military drug or alcohol detoxification program.

8. All documents and other evidence regarding any physical or mental disease, disability, or disorder affecting any individual the prosecution intends to use as a witness at trial, including, but not limited to, records of hospitalization or other treatments for such physical or mental disease, disability or disorder.

9. All information which may demonstrate an inconsistency or arguable inconsistency with statements made by another person or that person and all information which may demonstrate a lack of knowledge or denial of knowledge by a witness about the facts of his case or the guilt or innocence of the defendant.

10. The substance of any oral promises, inducements, agreements, etc., whether contingent or not, which have been made by any state or federal law enforcement representative, attorney, or other person acting as agent for on behalf, of any state or federal government to any person who is to be a witness in this case.

11. All person and/or informant files of all formal or informal government employees at agents whom the prosecution intends to call as witnesses at trial.

> Specifically, the defendant requests information which may indicate a defect in the witness' capacity to tell the truth.

While the forgoing material would not automatically lead to an acquittal, it too falls within the scope of *Brady*. In order to satisfy the due process obligation imposed upon it, the government must do more than simply provide facially exculpatory items. As the Supreme Court stated:

> "In the present case, the prosecutor failed to disclose evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest. Impeachment evidence, however, as well as exculpatory Evidence, falls within the Brady rule. Such evidence is "evidence favorable to an accused," so that, if disclosed and used effectively, it may make the difference between conviction and acquittal."

*United States v. Bagley,* 473 U.S. 667, 774 (1985) (citations omitted; emphasis supplied). See also *Giglio v. United States,* 405 U.S. 150, 154 (1972); *United States v. Garcia,* 936 F. 2d 648, 655 (2d. Cir. 1991); *Carter v. Rafferty,* 826 F. 2d 299, 1305 (3rd Cir. 1987) *cert denied,* 484 U.S. 1011 (1998); *United States v. Starusko,* 729 F. 2d 256, 260 (3rd Cir. 1984).

Indeed, courts have consistently held that impeachment material similar to that sought herein was within the scope of *Brady*. See, e.g. *Carter v. Rafferty,* 826 F. 2d 1299 (3rd Cir. 1987), *cert denied,* 484 U.S. 1101 (1998) (results of lie detector tests taken by prosecution witness): *United States v. Kelly,* 790 F. 2d 130, 135 (D.C. Cir. 1986) (FBI Report of Interview of a witness): *Government of the Virgin Islands v. Martinez,* 780 F. 2d 302, 306-311 (3rd Cir. 1986) (defendant's confession which showed that victim had a gun, not a knife); *Lindsey v. King,* 769 F. 2d 1034, 1040-1041 (5th Cir. 1985) (earlier statement of witness that he had not seen perpetrator's face); *United States ex rel. Smith*

*v. Fairman,* 769 F. 2d 386, 391-393 (7th Cir. 1985) (police officer's worksheets showing that gun allegedly used was inoperable); *United States v. Chitty,* 760 F. 2d 425, 428 (2nd Cir.), *cert denied.* 474 U.S. 945 (1985) (polygraph report showing that recantation of identification was untruthful).

The government has acknowledged its obligation to provide this type of material, but claims that it is entitled to delay production until the trial, seemingly redefining *Bagley/Giglio* material as Section 3500 material. The government's obligation to furnish, pursuant to Section 3500, much of the requested information once trial has begun does not, however absolve it from providing such material at a much earlier date to *Brady* and its progeny. As stated by one court, the restrictions of Section 3500 must be accommodated by the demands of due process and the relevant portions disclosed prior to trial. *United States v. Gleason, supra,* 265 F. Supp. at 887. In short, Ms. Castro's right to a fair trial would be imperiled if the prosecution could place such information in the category of Section 3500 material in order to delay turning it over to the defense. As the Third Circuit noted, there is a fundamental difference between *Brady* and Section 3500 material:

> "Under Brady, the defendant is apprized of the existence of exculpatory material; should the matter pertain to possible government witness and should the government elect not to call that witness, the defendant has options of how to proceed on the basis of the exculpatory information received. The same is not true under the operations of the Jenck's Act: should the government elect not to produce the Witness at trial whose statements are in the hands and whose testimony could conceivably assist the defendant, the defendant may never know that statements - exculpatory and otherwise – exist."

*United States v. Starusko, supra,* 729 F. 2d at 265.

Unless courts enter the fray between the defense and the prosecution, first over whether certain material fall within the *Brady* and its progeny, and second; as to the timing of the disclosure, defense counsel all too often find themselves in a position where material is discovered during or after trial. The Court in *United States v. Gatto,* 746 F. Supp. 435 (D.N.J., 1990), was faced with a similar motion. Since the government had already provided traditional *Brady* material, it was unnecessary to address that prong of the motion. The government, however, resisted turning over in advance of trial the sort of impeachment material which *Giglio* and *Bagley* held to fall within the *Brady* mandate. In unequivocal terms, the court rejected the government's argument and directed that such material be turned over to the defendants prior to trial. *Id*. at 474-476. It is respectfully requested that the same result should follow here, and that this Court specifically define that which the government is obligated to produce as *Brady* material, and order the government to produce such material well in advance of trial.

**B. SECTION 3500 MATERIAL SHOULD BE PRODUCED PRIOR TO TRIAL**

Section 3500, Title 18, U.S.C., requires the government to provide to a criminal defendant, upon his motion, "any statement" made by a government witness prior to testifying at trial. However, such material need not be provided until the witness has finished testifying on direct examination.

Unfortunately, literal compliance with the commands of Section 3500 have had the effect of considerably lengthening a trial. As one court recognized:

> "The recesses occasion by delayed production of Acts material, caused by the necessity of giving defense Counsel time to assess the [material] so that the adequate assistance of counsel can be afforded, will seriously hamper the efficient, orderly, and fair conduct of the trial… The trial will be difficult enough for the parties,

> the court and the jurors….without the added hindrance of numerous trial delays."

*United States v. Narciso,* 446 F. Supp. 252, 270 (E.D. Mich. 1977). While the Court does not have the power to remedy this potential by ordering the government to provide Section 3500 material at an earlier point, *United States v. Murphy,* 569 F. 2d 771, 773 (3rd Cir.) *cert denied,* 435 U.S. 955 (1978), it does have the power to use its persuasive abilities to encourage the government to voluntarily provide Section 3500 materials a few days before trial.

It is most respectfully submitted that, in the interest of both fairness and judicial economy, the Court should exercise that power, and urge the government to provide Section 3500 material as early as possible.

**POINT II**

**THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A WITNESS LIST AT LEAST A MONTH PRIOR TO TRIAL AND TO MAKE ITS WITNESSES AVAILIABLE TO DEFENSE FOR INTERVIEWS**

One of the few defense discovery rights actually recognized as being of constitutional dimension is the right of access to prospective witnesses; interference with this right violates due process. *United States v. Pepe,* 747 F.2d 632, 654 (11th Cir. 1984), citing, *Freeman v. Georgia*, 599 F. 2d 65 (5th Cir. 1979), *cert denied*, 444 U.S/ 1013 (1980). It is universally recognized that "both sides have right to interview witnesses before trial," *United States v. Black*, 767 F. 2d 1334, 1337 (9th Cir. 1985), *cert denied*, 474 U.S. 1022 (1985); *State v. Barncord*, 726 P. 2d 1322 (Kan. 1986); *State v. Smith*, 670

P.2d 96 (Mont. 1983), and the prosecution may not interfere with defense access to witness. *United States v. Black*, *supra*, 767 F.2d at 1337.

By this motion, Ms. Castro seeks not merely to enjoin that which is, in any event, forbidden-prosecutorial denial of access to witnesses, but also to afford the defense an opportunity, equal to that of the prosecution, to interview prospective witnesses. In *United States v. Peter Kiewit Sons' Co.*, 655 F.Supp. 73 (D. Colo. 1986), the court discussed the unique value of witness interviews by defense counsel,

> "All witness had been interviewed repeatedly by the government's attorneys or agents, without any defense representative present, and written statements had been taken. The government has agreed to make copies of these statements available to defense counsel, but defense counsel wishes to interview the witness in private. It is understandable that defense attorney might have entirely different questions to ask witness than those put by the prosecutors." *Id* at 77.

"Understandable" is an understatement. Central to our adversarial system of justice (as opposed to the inquisitorial system of justice in civil law countries) is the principle that the advocate (as opposed to the trier of fact or the accuser) is the proper person to investigate and prepare the defense he will present. As a distinguished state Supreme Court justice recently observed:

> "It is…illogical to give prosecutors the discretion to determine which witnesses are relevant to defendant's case and those witnesses who are not. Even assuming that a prosecutor will always exercise his discretion in good faith, the prosecutor is not in a position to determine what is relevant to the defendant's case. Relevance is in the eye of the beholder, particularly when the beholder is an adversary. I firmly believe that a defendant should be allowed to determine which witness may be important to his or her case will be. It is a function of a defendant's trial counsel to determine those matters that are important

to the defendant's case."

*In re Amendment to Florida Rule of Criminal Procedure 3.220* (Discovery, 550 So. 2d 1097, 110 (Fla. 1989) (Kogan, J.. concurring in part, dissenting in part).

Nor can it be argued that the right to interview witnesses before trial permits the defendant an unfair advantage. On the contrary,

> "[i]n a criminal case, the government has available to it vast resources not available to the defense through which to investigate and prepare for trial. Highly professional government investigators gather the evidence while government attorneys assimilate and organize it for the courtroom. Potential witnesses can be subpoenaed for interviews, or summoned before the grand jury and they may fear retribution from the government if they fail to cooperate in a criminal investigation."
> *United States v. Peter Kiewit Son's Co.* supra, 665 F. Supp. At 78.

In the absence of any showing of a risk to any witness from disclosures, defendant's request is not unreasonable. Nor would the production of a witness list be in any way prejudicial to the prosecution. The court's observation *United States v. Cannone*, 529 F.2d 296, 301 (2nd Cir. 1975) of the reasons of requiring disclosure of witness lists are clearly applicable here:

> "The most potent argument for compulsory disclosure of the identity of the prosecution's witness is that, without the benefit of such disclosure, the defense may be substantially hampered in its preparation for trial. At a minimum, pretrial ignorance of the identity of the prosecution's witnesses tends to distract from the effectiveness of the defense's objections and cross-examination. Although continuances, which tend to mitigate the detrimental effects of unpreparedness, are sometimes obtainable, not only are they merely a partial solution to the problem of unprepareness, but, in addition, their prolongation of trial is of course costly to both the government and the defendant."

*Id.* at 301. *See also United States v. Mosely,* 450 F.2d 506 (5th Cir. 1971), *cert. denied.* 405 U.S. 975 (1972); *United States v. Goldman, supra,* 439 F.Supp. 337 Z (S.D.N.Y. 1997)

We concede that Rule 16, Fed. R. Crim. P., is silent as to whether a witness list must be produced pre-trial. *United States v. Reis*, 788 F.2d 54, 58 (1st Cir 1986). However, under the particular facts of this case, the need to prepare an effective defense should trump any other concern.

**POINT III**

**THE ADMISSABILITY OF "OTHER CRIMES, WRONGS OR ACTS" EVIDENCE SHOULD BE DETERMINED PRIOR TO TRIAL**

In the instant case, Ms. Castro apparently has no record of conviction; however, the government has advised us that it may seek to admit unspecified similar acts as evidence. Under these circumstances, the government should be directed to immediately advise the defendant what, if any, prior convictions or alleged similar acts they will seek to admit as evidence at trial pursuant to 404 (b).

Federal Rules of Evidence Rule 404(b) provides that evidence of other crimes, wrongs or acts are "not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent preparation, plan, knowledge, identity or absence of mistake or accident" (FRE 404(b).

The Second Circuit has adopted an inclusionary approach to Rule 404(b), which provides that such evidence is "admissible for any purposes other than to show a defendant's criminal propensity." *United States v. Pitre*, 960 F.2d 1112, 1118 (2nd Cir

1992) [citing *United States v. Roldan-Zapata* 916 F. 795, 804 (2nd Cir. 1990), thus, the District Court is charged with determining whether the 404 evidence is offered for a proper purpose. If it is offered for a proper purpose,, the Court must next determine if it is relevant to an issue in the case. Of course, even if relevant and admissible under Rule 404, such evidence of other crimes, wrongs or acts, may be excluded pursuant to Rule 403 if:

> "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence" (FRE 403).

On this note, it bears stating that evidence may be considered propensity evidence, and thus inadmissible, despite its being touted as evidence having a proper purpose. *See United States v. Afjehei*, 869 F.2d 670 (2nd Cir 1989).

Thus, before admitting such evidence, a court must determine whether the evidence is: (a) in fact, advanced for a proper purpose; (b) relevant to the crime for which the defendant is on trial; (c) more probative than prejudicial within the framework of Rule 403 Fed. R. Evid.; and (d) if requested, is admitted with limiting instruction. *Huddleston v. United States*, 485 U.S. 681, 691 (1998); *United States v. Ramirez*, 894 F.2d 565, 568 (2nd Cir. 1990).

In performing the balancing analysis required by *Huddleston*, a trial court must carefully consider the obvious prejudice which arises from the introduction of evidence suggesting that the defendant has engaged in criminal activity in addition to the offenses with which he is charged. Such evidence implies that, since he committed the other crimes, the defendant must also be guilty of the crimes for which he is on trial. *United*

*States v Schwartz*, 790 F.2d 1059, 1062 (3rd Cir. 1986). *See also, Carter v. Hewitt*, 617 F.2d 961, 972 93d Cir. 1980) ("A classic example of unfair prejudice is a jury's conclusion…that since the defendant committed so many other crimes, he must have committed this one too). "Other crimes, wrongs or acts" evidence may also tend to unfairly excite the juror's emotions against the defendant. *United States v. Figueroa*, 618 F.2d 934, 943 (2nd Cir. 1980). It may confuse or mislead the jury. At a very minimum, the presentation of "other crimes, wrongs or acts" evidence can result in considerable delay and consume enormous amounts of time.

Indeed, there are few areas in which it is as important for the court to keep a watchful eye of admissibility of "other crimes, wrongs or acts" evidence. *United States v. Figueroa, supra,* F2d at 944. *See also United States v. Aboumoussallem*, 726 F2d 906, 911 n.4 92d Cir. 1984). Against such negative factors, a trial court must weight "the presence of absence of a *Schwartz, supra* 790 F.2d at 1059.

Although Rule 404(b) requires the government, upon request, to provide "reasonable notice in advance of trial" of any "other crimes, wrongs, or acts" it intends to offer at trial, it is silent as to when and how the admissibility of such evidence is to be determined. It is respectfully submitted, however, that the highly fact specified analysis a court must perform requires that the defendants no only have notice of "other crimes, wrongs or acts" evidence which the government intends to offer against them, but also the opportunity for a meaningful hearing on the issue of admissibility. Indeed, the court's discretionary function is ultimately aborted if both the defendant and the court are to confront the issue of admissibility of such evidence in the heat of a trial. *United States v. Lewis*, 482 F. 2d 623, 643 (D.C. Cir. 1973) The defendant and the court should thus have

the opportunity to perform the delicate analysis required by *Huddleston* prior to trial. Accordingly, if there is likelihood, as here, that the government specify which evidence it intends to introduce, the Court should hold a hearing prior to trial to resolve all legal and factual issues regarding admissibility of such evidence.

**<u>POINT IV</u>**

**THE POST-ARREST STATEMENTS OF THE DEFENDATN SHOULD BE SUPPRESSED**

As set forth in the Affidavit of Dismaris Castro, the defendant's post-arrest statements were elicited without the benefit of *Miranda* warnings, accordingly they should be suppressed. In *Miranda v. Arizona*, 384 U.S. 436, 468-69 (1996), the court explained the importance of safeguarding a defendant's Fifth Amendment privilege against self-incrimination.

> The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. *Id. at* 468.

In subsequent decisions, the Supreme Court has affirmed the importance of *Miranda and* the prophylactic effect of *Miranda.* The Supreme Court in *Connecticut v. Barrett*, 479 U.S. 523, 533 (1987):

> The fundamental purpose of the Court's decision in Miranda was to assure that the individual's rights to choose between speech and silence remains unfettered throughout the interrogation process...To this end, the Miranda Court adopted prophylactic rules designed to insulate the exercise of the Fifth Amendment rights from government compulsion, subtle or otherwise, that operates on the individual to overcome free choice in producing a statement after the privilege has been invoked. *Id at* 533.

See also *Dickerson v. U.S.*, 530 U.S. 428 (2000).

A violation of these safeguards mandates the exclusion of the evidence

obtained. See *Chavez v. Martinez*, 538 U.S. 760, 123 S.Ct. 1994 (2003), *Oregon v. Elstad* 470 U.S. 298, 314-316 (1985), 105 S.Ct. 1285.

**CONCLUSION**

For all the foregoing reasons, the defendant, Dismaris CASTRO, respectfully requests that his motion for suppression of evidence and other relief be granted in its entirety and/or alternative, that the court hold a hearing to resolve the factual disputes where appropriate.

Dated: New York, New York

April 16, 2008

Respectfully submitted,
GUTTLEIN & ASSOCIATES

By:_______________________

Jorge Guttlein, Esq.
291 Broadway, Suite 1500
New York, NY 10007
Tel. (212) 608-3188