UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA          :

   - v. -                                        :         07 Cr.452 (DLC)

DISMARIS CASTRO,
                                          :
        Defendant.
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## GOVERNMENT'S MEMORANDUM IN OPPOSITION

## TO DEFENDANT DISMARIS CASTRO'S PRETRIAL MOTIONS

      The Government respectfully submits this Memorandum in Opposition to defendant Dismaris Castro's (the "defendant's") pretrial motion seeking (1) disclosure of *Brady* and § 3500 material; (2) notice of the Government's intention to introduce evidence of prior bad acts under Federal Rule of Evidence 404(b); (3) production of a witness list; (4) suppression of statements of the defendant made to DEA agents while being transported to court for her initial presentment.

      The defendant's first three requests, all discovery related, should be denied because the defendant failed to comply with Local Criminal Rule 16.1. These discovery motions should also be denied on the merits. The motion for *Brady* material should be denied because the Government has and will continue to comply with its *Brady* obligations. The motion for notice of 404(b) evidence should similarly be denied because the Government will provide notice of any 404(b) evidence that it is aware of two weeks

prior to trial. The defendant's motion for a witness list should be denied because production of such a list is not warranted on the facts of this case. As for the defendant's suppression motion, the Government believes that a factual hearing so that the Court may determine whether the defendant's statements while being transported to court the day after her arrest were made in response to interrogation.

## Background

**I.    Offense Conduct**

On or about May 22, 2007 a grand jury sitting in this district returned a sealed indictment charging Dismaris Castro with participating in a conspiracy to distribute five or more kilograms of heroin, in violation of 21 U.S.C. §§ 812, 841(b)(1)(A), and 846. Castro was arrested on November 28, 2007 in Tampa, Florida.

Should the case proceed to trial, the Government will prove that on each of several occasions in 2006 and 2007 Castro received approximately 900 grams of heroin on behalf of her brother, who was a customer of a Colombia-based heroin organization. Castro also delivered payments for the heroin to a member of the Colombia-based organization.

The Government intends to prove the defendant's guilt in part through the testimony of a cooperating witness (the "CW") who worked for the heroin organization. The CW will testify that he routinely received kilogram quantities of heroin from his boss in Colombia through a network of couriers, and then delivered the heroin at his boss's instructions to New York-area heroin dealers. This testimony will be corroborated by Title III interceptions of phones used by the CW, by DEA surveillance, by seizures from

dealers who received heroin from the CW, and possibly by the testimony of one or more other heroin dealers supplied by the organization who are cooperating with the Government.

The CW will testify that one of his regular heroin customers was a man he knew as "Willy," who is the brother of Castro. "Willy" was sometimes in the Dominican Republic when the CW had heroin available and, on those occasions, "Willy" instructed the CW to leave the heroin with Castro. On one occasion in January 2007 – while the DEA was monitoring the CW's telephone calls – the CW received a shipment of heroin from Colombia and delivered 900 grams to Castro. DEA agents surveilled the delivery to Castro, which took place outside her home, and observed the CW provide Castro with a particular bag (which the CW will testify contained the heroin packaged in shoes) which Castro took into her apartment. DEA agents then knocked on the door of Castro's apartment and were invited in. The agents asked Castro if they could see the bag she had just entered the house with – Castro only showed the DEA *other* bags (not the one she had entered the house with, containing the heroin) and denied that she had taken any other bag into the house. Subsequent to this delivery, the DEA intercepted calls between the CW and "Willy" discussing efforts to sell the heroin delivered to Castro to a man later identified as Juan Sanchez; the DEA then seized approximately $20,000 that Sanchez was delivering to the CW as a partial payment for the heroin.

**II.   Discovery**

On December 18, 2007 the defendant sent a discovery request letter which set out

dozens of requests, some of which on their face had no applicability to the present case (e.g, requests directed at items recovered from searches of the defendant's apartment, despite the fact that there had been none). (Exhibit C to Defendant's Motion).  The defendant subsequently requested that the Government defer production of its discovery until a proffer could be arranged with the defendant so the Government would be able to better assess the defendant's credibility.

Discovery was ultimately produced on January 25, 2008 and was accompanied by a letter of that same date.  The discovery included surveillance reports reflecting, among other things, the defendant's false statement to DEA agents about not having the bag the CW had been seen delivering to her and the defendant's post-arrest statements.  The Government also produced the Title III interceptions, orders, and line sheets (the defendant herself was not intercepted), phone subscriber records, and records of drugs and money seized from other co-conspirators.  The Government also invited the defendant to inspect other evidence and stated it would continue to comply with its discovery obligations.

With respect to *Brady*, the Government stated in its letter that "it recognizes its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  The Government is currently unaware of any *Brady* material, but will provide timely disclosure if any such material comes to light.  The Government will provide material under *Giglio v. United States*, 405 U.S. 150, 154 (1972), and its progeny, in a timely manner and prior to the witness's testimony."

The Government also acknowledged in its letter receipt of the defendant's discovery request "which appears to be a form request for numerous categories of information, not all of which [are] discoverable under Rule 16 or otherwise at this time. Please review the discovery provided with this letter and we can then discuss what items, if any, you believe still need to be addressed."  Defense counsel did not contact the Government further regarding discovery until he served a copy of the instant motion.

## Argument

### A. Castro's Discovery Motions Should Be Rejected Because She Did Not Confer With The Government As Required Under Local Criminal Rule 16.1

Local Criminal Rule 16.1 of the United States District Courts of the Southern and Eastern Districts of New York provides that "no motion addressed to . . . discovery and inspection shall be heard unless counsel for the moving party files with the court simultaneously with the filing of the moving papers an affidavit certifying that said counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the court and has been unable to reach such an agreement."  This Court specifically requires that such an affidavit be filed in its individual practices posted on the Southern District of New York web site. No such affidavit was filed by Castro, and no such affidavit could have been filed because defense counsel did not contact the Government about discovery subsequent to the Government's letter dated January 27, 2008 which invited such a discussion to address any issues not resolved by the Government's production.  This

"failure constitutes a sufficient basis on which to deny" a discovery motion. *See United States v. Minaya*, 395 F. Supp. 2d 28, 32 (S.D.N.Y 2005) (denying discovery motion seeking disclosure of *Brady* material and early notice of Rule 404(b) evidence). Such a consultation could have resolved any differences concerning *Brady* obligations or at least crystalized any dispute so that it could have been presented to the Court in a sharper fashion. Similarly, given that the Government will voluntarily agree to disclose Rule 404(b) evidence two weeks prior to trial, Castro' motion seeking a Court order for early disclosure may have been unnecessary.

### B. The Government Will Comply With Its Obligations Under *Brady*, *Giglio*, and the Jencks Act

Castro asks the Court to order the Government to produce a variety of materials which she alleges that she is entitled to under *Brady* and its progeny. Pursuant to the Due Process Clause of the United States Constitution, the Government has a duty to disclose favorable evidence to the accused where such evidence is "material" either to guilt or to punishment. *See Brady*, 373 U.S. at 87. Favorable evidence includes evidence that tends to exculpate the accused, see id., as well as evidence that is useful to impeach the credibility of a government witness. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). *Brady* information must be disclosed "in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial." *United States v. Rodriguez,* 496 F.3d 221, 226 (2d Cir.2007). See also *In re United States (United States v. Coppa)*, 267 F.3d 132, 146 (2d

Cir. 2001) (must be disclosed in time for its "effective use" at trial).

Castro's first request is general – that the government "produce the sort of materials which, on its face, is directly exculpatory." (Def. Mem. at 8). Castro further contends that the Government has "failed to state whether it has such material. . . ." This is inaccurate. The Government's January 27, 2008 discovery letter explicitly stated "[t]he Government is currently unaware of any *Brady* material." That remains the case. The Government will of course produce and *Brady* material if and when it learns of such material, just as it agreed to do in its January 27, 2008 letter.

Castro then asks the Court to produce 11 specific categories of material which she claims fall "within the scope of *Brady*." (Def. Mem. at 8-10). Castro cites no authority for most of these requests, and many clearly do not fall within *Brady* or *Giglio*. For example, Castro's first request for the "name and address" of everyone the Government believes to have "relevant information" about the case goes far beyond the Government's duty to disclose exculpatory or impeachment information. Similarly, the Government has no broad duty to provide a written summary for each person "interviewed in connection with the investigation," as the defendant seeks in her second request. For witnesses who will not be called at trial, there is no authority for the production of all such summaries unless information in the summary provides material exculpatory or impeachment-related information.

There are similar overstatements of the Government's obligations in virtually every one of the defendant's eleven enumerated request, but the Court does not need to

- 7 -

address each one in light of the Government's representation that it will comply with *Brady* and its progeny. Courts in this district have repeatedly held such representations to be sufficient. The Government is committed to making such information available to the defense in sufficient time so that they will be able to make effective use of it at trial.[1] Nothing more is required, and no order from this Court would be appropriate. *See United States* v. *Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *2 (S.D.N.Y. Apr. 15, 2002) (noting that "[d]istrict courts in this circuit routinely accept" as sufficient the Government's representation that it will produce *Giglio* material along with prior witness statements pursuant to 18 U.S.C. § 3500, or earlier if necessary for defense counsel to make effective use of it); *United States* v. *Nunez*, No. 00 Cr. 121 (RCC), 2001 WL 91708, at *7 (S.D.N.Y. Feb. 1, 2001) ("In light of the Government's good faith representations, there is no present need to direct the Government to comply with their discovery obligations pursuant to *Brady*.").

---

[1] Consistent with *Coppa*, and as outlined above, the Government will continue to follow its historical practice of producing any directly exculpatory information as soon as is practicable under the circumstances. The materiality of such evidence, which would go toward disproving the Government's evidence, is such that the defense should receive it as soon as possible to make effective use of it, i.e., to locate and interview relevant witnesses, conduct scientific tests on physical evidence, and the like. The ability of the defense to make effective use of impeachment evidence, however, does not generally require such substantial advance notice, as its primary use is to cross-examine the Government's witnesses at trial. Extrinsic evidence used for impeachment is generally inadmissible, so in most cases the defense need only be aware of the nature of a witness's prior bad acts or other impeachment-related conduct by the time that witness testifies to make "effective use" of that information at trial. Accordingly, absent a particular need for earlier disclosure of a particular piece of impeachment information, the Government will make such disclosures the Friday prior to trial, when it produces its § 3500 material.

Finally, Castro asks the Court to "urge" the Government to turn over 18 U.S.C. § 3500 material early. The Jencks Act, 18 U.S.C. § 3500, specifically states that prior witness statements cannot be ordered to be disclosed until after the witness has testified on direct examination. Section 3500 provides that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Rule 16(a)(2) also makes clear that there is no entitlement under Rule 16 to the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." In light of these provisions, requests for discovery of such "3500 material" in advance of trial are uniformly denied. Indeed, there is no legal basis to order the disclosure of statements of Government witnesses before their direct testimony at trial. *See United States ex rel. Lucas* v. *Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974); *United States* v. *Sebastian*, 497 F.2d 1267, 1268-69 (2d Cir. 1974); *United States* v. *Percevault*, 490 F.2d 126, 132 (2d Cir. 1974). The Government in this case will adhere to its customary practice of producing 3500 material in its possession on the Friday before trial.

## C.    Castro Is Not Entitled To A Witness List

Castro also requests that the Government provide a list of its possible trial witnesses. (Def. Mem at 13-16). That request should be denied because witness lists are not routinely discoverable and because Castro has shown no particularized need for

one.  As the Second Circuit has explained, "Federal Rule Criminal Procedure 16 does not require the Government to furnish the names and addresses of its witnesses." *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990).  Nor does any other rule or statute obligate the Government to disclose the identity of its prospective witnesses.  *See United States v. Alessi*, 638 F.2d 466, 481 (2d Cir. 1980) ("the prosecution [is] under no obligation to give [the defendant] advance warning of the witnesses who would testify against him" (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977))).  Moreover, *United States v. Cannone*, 528 F.2d 296 (2d Cir. 1975), makes clear that a defendant is entitled to disclosure of the Government's witnesses only if he makes "a specific showing that the disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." *Id.* at 301.  A mere "abstract conclusory claim that such disclosure [is] necessary to [the] proper preparation for trial" is insufficient.  Id. at 301-02 (abuse of discretion for the district court to grant defense motion for a witness list supported by only general statement of need); *see also United States v. Biaggi*, 675 F. Supp. 790, 810-11 (S.D.N.Y. 1987); *United States v. Feola,* 651 F. Supp. at 1138.

The law is clear that, "absent 'some particularized showing of need,' the defendant is not entitled to lists of government witnesses . . . ." *United States v. Wilson*, 565 F. Supp. 1416, 1438 (S.D.N.Y. 1983) (Weinfeld, J.), overruled on other grounds, *United States v. Reed*, 773 F.2d 477 (2d Cir. 1985).  Because this "heavy burden," *United States v. Alvalle*, No. 85 Cr. 419 (JFK), 1985 WL 2348, at *1 (S.D.N.Y. Aug. 22, 1985), rarely

can be met, requests for witness lists routinely are denied in this District. *See, e.g.*, *United States v. Ahmad*, 992 F. Supp. 682, 685 (S.D.N.Y. 1998); *United States v. Perez*, 940 F. Supp. 540, 552 (S.D.N.Y. 1996).

Here, Castro has not demonstrated a particularized need for a witness list – indeed, her motion fails to even assert any particularized grounds. Moreover, this is a relatively straightforward case which the Government expects will involve less than ten witnesses (assuming the defendant stipulates to the testimony of record custodians) and take less than one week for the Government to present. The defendant is already aware of the identity of the DEA agents who have knowledge of Castro's criminal activities from the surveillance reports produced in discovery. Castro is also aware of the identity of the CW (although perhaps not his full name). The defendant will learn of most if not all of the additional witnesses no later than the Friday before trial, when the Government produces § 3500 material for these witnesses. Nothing further should be required.

**D.   The Government Will Comply With Its Obligations Under Rule 404(b)**

Castro also requests "immediate" disclosure of evidence of similar acts by Castro that the Government intends to introduce pursuant to Rule 404(b) of the Federal Rules of Evidence. (Def Mem. at 16). Rule 404(b) sets no time limit for the Government to disclose evidence it intends to offer pursuant to the rule, requiring only that "the government shall provide reasonable notice in advance of trial . . . of the nature of any such evidence it intends to introduce at trial." Any requirement to disclose such evidence far in advance of trial would be unworkable, because the Government cannot predict

- 11 -

whether it will offer such evidence until the proof, and the anticipated defenses, begin to crystallize as the trial date nears. Indeed, the Second Circuit has approved disclosure of Rule 404(b) evidence as late as four days before trial, and even during trial, depending on the circumstances of the particular case. *See United States* v. *Valenti*, 60 F.3d 941, 945 (2d Cir. 1995) (notice four days prior to trial sufficient where Government provided documents to defense on same day they were obtained); *United States* v. *Matthews*, 20 F.3d 538, 551 (2d Cir. 1994) (notice during trial sufficient when balanced against need to avoid indirect disclosure of identity of Government witness).

The Government agrees to disclose the substance of any prior bad acts, to the extent known to the Government, no later than two weeks before trial, to enable the defense to challenge the admission of such evidence. Such a practice has been approved by courts in this district. *See Triana-Mateus*, 2002 WL 562649, at *6 ("It has been the practice of courts in this circuit to deem notice afforded more than ten working days before trial as 'reasonable' within the meaning of Rule 404(b).").

**E.    A Hearing Is Necessary To Resolve Castro's Suppression Motion**

Castro was arrested on November 28, 2007 by DEA agents in Tampa, Florida. The arresting agents were unfamiliar with the details of the case, and therefore did not attempt to interrogate Castro or read her the *Miranda* warnings. The agents did tell her, in substance, that she had indicted because she had taken delivery of some heroin.

Castro was detained overnight and, on the morning of November 29, 2007 was picked up by the DEA from a local jail and transported to federal court. During this trip,

Castro made several statements to the DEA agents transporting her that were not in response to any questioning. In this statement (a report reflecting it is set fort as Exhibit D to Castro's motion), Castro told the DEA agents, among other things, that she from time to time received packages on behalf of her brother that were collected from a man she knew as "El Gordo" and that she did not "want[] to know" what was inside the packages so she never asked her brother about them.

Castro has submitted an affidavit stating in summary fashion that her statements were made in response to interrogation. The DEA agents state that they did not question Castro and that her statements were spontaneous and volunteered as they drove her to federal court. A hearing is necessary to resolve this issue because, if the statements were not made in response to interrogation they are admissible. The function of the *Miranda* warnings is to discourage law enforcement from interrogating suspects who have not been informed of their rights, not to inhibit the use by police of statements by a defendant which are not the produce of interrogation. Indeed, the *Miranda* Court specifically held that "[v]olunteered statements of any kind are not barred by the Fifth Amendment" and that "the fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." *Miranda* v. *Arizona*, 384 U.S. 436, 478 (1966)

In *Rhode Island v. Innis*, 446 U.S. 291 (1980), the Supreme Court affirmed that *Miranda* was limited to statements in response to interrogation, and held that a defendant is not "interrogated" by law enforcement unless directly questioned by officers or subject

to its "functional equivalent," defined as being subject to statements or actions by law enforcement "reasonably likely to evoke an incriminating response." *Id.* at 301. As examples of tactics "reasonably likely to evoke an incriminating response," the Supreme Court offered situations in which law enforcement engaged "witnesses" to falsely identify the defendant in a line-up or accuse the defendant of a fictitious crime in the hopes of prompting a confession to the crime under investigation. *Id.* at 291. The facts of *Innis* themselves make clear that the "functional equivalent" doctrine is a limited one. In *Innis*, the Supreme Court found that the police had not engaged in the "functional equivalent" of questioning by talking about their concern that the gun that they believed the defendant had hidden would be found and potentially used by children at a nearby school for the disabled, which resulted in a confession.

Following *Innis*, the Second Circuit has affirmed that volunteered statements that are not the product of questioning or its "functional equivalent" are admissible regardless of *Miranda* warnings. *See United States v. Gelzer*, 50 F.3d 1133, 1138 (2d Cir. 1995) (affirming district court's decision not to suppress volunteered statement). *See also United States v. Grayson*, 2005 WL 1560478 (S.D.N.Y. 2005) (Patterson, J.) (suppression not warranted where defendant did not contradict officer's claim that statement was spontaneous); *United States v. Medina*, 1998 WL 241724, *5 (S.D.N.Y. 1998) (Scheindlin, J.) (officer's comment that seized bag contained "a lot of money" not functional equivalent of interrogation); *United States v. Heatley*, 994 F. Supp. 475, 477 (S.D.N.Y. 1998) (Sotomayor, J.) (police comment arguably implying case against

defendant was strong held not to constitute interrogation).

For this reason, a hearing is necessary to resolve whether Castro's statements were volunteered or made in response to interrogation.

**Conclusion**

For the reasons set forth above, Castro's discovery motion should be denied.

Dated:     May 5, 2008.

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney

                    By:    /s/ Arlo Devlin-Brown
                           ARLO DEVLIN-BROWN
                           Assistant United States Attorney
                           (212) 637-2506